```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**VIRGINIA A. HUFFERD,**

      **Plaintiff,**

  vs.                                          **Civil Action 2:14-cv-498**
                                                            **Judge Sargus**
                                                            **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

**I.**    **Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is before the Court for consideration of *Plaintiff Virginia Hufferd's Statement of Errors* ("*Statement of Errors*"), Doc. No. 10, and *Defendant's Memorandum in Opposition*, Doc. No. 13.  Plaintiff has not filed a reply.

Plaintiff Virginia A. Hufferd filed her applications for benefits on November 4, 2010, alleging that she has been disabled since January 1, 2006.  *PAGEID* 68, 250-56.  The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on December 19, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Mary

A. Harris, who testified as a vocational expert. *PAGEID* 68, 85. Plaintiff, through her representative, amended her alleged onset date at the hearing to February 1, 2008. *PAGEID* 92. In a decision dated January 10, 2013, the administrative law judge concluded that plaintiff was not disabled from February 1, 2008, through the date of the administrative decision. *PAGEID* 79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 28, 2014. *PAGEID* 47-50.

Plaintiff was 50 years of age on the date of the administrative decision. *See PAGEID* 79, 250. She has at least a high school education, is able to communicate in English, and has past relevant work as a case manager and home health aide. *PAGEID* 77-78. Plaintiff was last insured for disability insurance purposes on March 31, 2013. *PAGEID* 70. She has not engaged in substantial gainful activity since February 1, 2008. *Id*.

## II.  Medical Evidence[1]

Plaintiff has treated at Scioto Paint Valley Mental Health Center since November 2000. *PAGEID* 366. Plaintiff treated in the Community Psychiatric Support Treatment Program for medication management in 2006, 2008, and 2009. *PAGEID* 384-90. Plaintiff attended an individual counseling session at the center on January 29, 2010, for the first time in nearly seven years. *PAGEID* 378. She reported "multiple significant stressors" related to recent deaths in her family. *Id*. The counselor described plaintiff as "tearful" and noted

---

[1] The Court's discussion of the evidence is limited to the issues presented in plaintiff's *Statement of Errors*.

2

that she "mostly appears to need to tell her story." *Id*. Plaintiff did not keep counseling appointments scheduled for February 19, March 10, and March 18, 2010. *PAGEID* 374-77. Plaintiff had no complaints or concerns during a July 8, 2010 appointment. *PAGEID* 373.

Plaintiff has treated with J. Mark Hamill, M.D., of the Scioto Paint Valley Mental Health Center, since November 2001. *PAGEID* 397-431. On April 4, 2006, plaintiff reported "that she's doing okay with the medications the way they are." *PAGEID* 409. Dr. Hamill diagnosed major depression, single episode, in remission; generalized anxiety disorder; and panic disorder. *Id*. Plaintiff continued to treat with Dr. Hamill every four to six months through February 2011. *PAGEID* 397-431. On June 26, 2007, plaintiff reported that she thought people were talking about her at work. *PAGEID* 406. In 2008, plaintiff reported that she was anxious; *PAGEID* 404 (January 7, 2008); and that she lost her job "because she was off too long" after having shoulder surgery and that she tried to go back to work but was told "they don't need the help now." *PAGEID* 402 (June 5, 2008). Plaintiff also reported increased anxiety and panic attacks in January 2010. *PAGEID* 398. Plaintiff often reported being under stress, but that she was doing well on her medications. *PAGEID* 408 (July 2006: "doing fine with the medication"), 407 (January 2007: "doing well with the medication the way it is"), 401 (August 2008: "medication is doing well the way it is"), 400 (February 2009: "medications are doing fine the way they are"), 399 (August 2009: "doing okay and doesn't have any depression yet"), 397 (August 2010: "doing well with medication"), 396

3

(February 2011: "psych meds are doing fairly well overall").

Beginning in 2011, plaintiff treated with Christopher A. Kovell, D.O., of the Scioto Paint Valley Mental Health Center. *PAGEID* 697. On July 25, 2011, plaintiff reported increased stress due to caring for her five grandchildren and her sister being diagnosed with cancer. *Id*. Dr. Kovell adjusted plaintiff's medications due to "concern about the pattern of continually escalating doses of Xanax with no decreases" and started her on a trial of Seroquel. *Id*.

Plaintiff treated with Kurt W. Heintzelman, M.D., of the Scioto Paint Valley Mental Health Center on October 6, 2011. *PAGEID* 696-97. Plaintiff reported that she had discontinued use of Seroquel and that she was "doing pretty well on current meds." *PAGEID* 696. Plaintiff was sleeping "OK" and had no "current MH complaints." *Id*. On January 5, 2012, Dr. Heintzelman noted that plaintiff was "doing well," was sleeping okay, had no other concerns, and demonstrate good hygiene and a bright affect. *PAGEID* 693-94. Dr. Heintzelman diagnosed history of depression, stable; and "Iatrogenic BZD Dep." *PAGEID* 694.

Plaintiff treated with Sarah Cullison, D.O., of the Scioto Paint Valley Mental Health Center, on July 17, 2012. *PAGEID* 799-02. Plaintiff reported that she had recently fallen twice during a blackout and that "she takes care of 6 of her grandchildren." *PAGEID* 799. Plaintiff's mental status exam revealed cooperative behavior, intact attention, no agitation or retardation of movement, no tics, a euthymic affect, coherent thoughts, good judgment and insight, and average intelligence. *PAGEID* 801. Plaintiff described her mood as

4

"I'm OK as long as I'm not around 15 kids." *Id*. Dr. Cullison diagnosed "MDD, stable;" "H/O GAD;" and "[r]emote h/o alcohol dependence, in longterm remission." *PAGEID* 802. Plaintiff reported "a bunch of personal tragedies" at her November 6, 2012 appointment. *PAGEID* 797-98. Plaintiff reported that she was taking classes to become a substance abuse counselor and that she had undergone a fingerprinting/background check for a job but had decided that she could not handle the job. *PAGEID* 797. Plaintiff still had custody of five grandchildren, but only one was living with her; she was attempting to obtain custody of two more grandchildren. *Id*. Upon examination, plaintiff was anxious and described her mood as "alright." *PAGEID* 798. In addition to her previous diagnoses, Dr. Cullison diagnosed "Iatrogenic BZD and opioid dependence." *Id*.

Plaintiff treated with Brian S. Cohen, M.D., on January 16, 2008, for a previous injury to her left shoulder following a fall. *PAGEID* 461. Dr. Cohen noted that plaintiff had previously been treated with anti-inflammatory medication, local injections, and physical therapy with no improvement. *Id*. On February 1, 2008, Dr. Cohen performed a left shoulder arthroscopy, subacromial decompression, biceps tenotomy, and open biceps tenodesis. *PAGEID* 462-64. Dr. Cohen diagnosed left shoulder rotator cuff tear and partial tear of biceps tendon. *Id*.

A January 3, 2006 exam of the lumbar spine revealed "[m]inimal degenerative changes of the lumbar spine." *PAGEID* 528. Exams of plaintiff's lumbar spine on June 26, 2009, and May 28, 2010, were normal and revealed no acute abnormality. *PAGEID* 451, 456. A January

5

17, 2011 MRI of the lumbar spine revealed "minimal spondylolisthesis of L4 and L5" and "degenerative disc disease throughout the lumbar spine." *PAGEID* 653.

A March 28, 2006 MRI of the cervical spine revealed annular and disc bulging with beginning disc herniation at the C6-7 level. *PAGEID* 526. An exam of the cervical spine revealed degenerative changes and no acute bony abnormalities. *PAGEID* 792.

A December 28, 2011 examination of plaintiff's left knee revealed "mild tricompartmental osteoarthritic changes." *PAGEID* 701.

A July 11, 2012 exam of plaintiff's right elbow revealed "[c]alcification adjacent to the medial epicondyle of the distal humerus" suggestive of calcific tendonitis. *PAGEID* 702. There was no acute bony or joint abnormality. *Id*.

Plaintiff treated regularly with Biplav Yadav, M.D., from 2006 through 2012. *See PAGEID* 531-98, 604-38, 666-89, 711-62, 819-22. On June 1, 2011, Dr. Yadav completed a physical capacity evaluation. *PAGEID* 779-81. Dr. Yadav diagnosed chronic low back pain, bilateral radiculopathy, and depression/anxiety. *PAGEID* 779. According to Dr. Yadav, plaintiff could occasionally lift and carry five pounds, stand and walk less than 30 minutes during an eight-hour day, and sit less than 30 minutes during an eight-hour day. *Id*. Plaintiff could sit for 20 minutes before needing to stand, stand for 10 minutes before needing to sit, and would need to lie down two to three times during an eight-hour day. *Id*. Dr. Yadav indicated that these limitations were supported by "painful SLR – B/L and [decreased] PROM" and "MRI  -

L Spine – multilevel DDD, spondylolisthesis L4-L5." *PAGEID* 780. Plaintiff could never climb ladders or push/pull and could frequently twist, stoop/bend, crouch, and climb stairs with pain. *Id*. Plaintiff would have difficulty balancing on narrow, slippery, or erratically moving surfaces because "the pain in [her] back and legs makes it difficult to walk on uneven surfaces and tends to fall." *Id*. Dr. Yadav commented that these limitations had existed since 2006, and that plaintiff could perform these functions "in combination, on a sustained work day basis" for zero to three days per week and for fewer than three consecutive weeks per month. *PAGEID* 781.

Dr. Yadav also completed a chronic pain residual functional capacity questionnaire on December 12, 2012. *PAGEID* 814-18. According to Dr. Yadav, pain often interfered with plaintiff's attention and concentration, plaintiff was severely limited in her ability to deal with work stress, and plaintiff had no side effects from her medications that would affect her ability to work. *PAGEID* 815. Dr. Yadav opined that plaintiff could walk less than one block without resting or severe pain, sit for 20 minutes at one time, stand for 20 minutes at one time, and sit and stand/walk for a total of less than two hours in an eight-hour workday. *PAGEID* 815-16. Plaintiff would need to walk during a workday every 20 minutes for 10 minutes at a time. *PAGEID* 816. Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. *PAGEID* 817. Plaintiff could occasionally bend and twist at the waist; she could use her right hand 80 percent of the time to grasp, turn, and twist objects; and she

7

would miss approximately two days of work per month due to her impairments or treatment. *PAGEID* 817.

Plaintiff was consultatively evaluated by Richard M. Ward, M.D., on July 15, 2010. *PAGEID* 783-85. Upon examination, plaintiff had full range of motion in her right shoulder, no weakness on manual testing, normal grip strength, involuntary muscle spasm and loss of lumbar spine motion, and painful straight leg raising at 80 degrees. *PAGEID* 783-84. Dr. Ward opined that plaintiff has a 32 percent partial impairment of the body as a whole, consisting of a 15 percent impairment because of loss of motion in her lumbar spine secondary to involuntary muscle spasm, 13 percent impairment because of loss of motion in her cervical spine secondary to involuntary muscle spasm, and six percent impairment because of left shoulder surgery. *PAGEID* 784.

Lynne Torello, M.D., reviewed the record and, on March 3, 2011, opined that plaintiff did not have a severe impairment. *PAGEID* 134. Dr. Torello noted that, since shoulder surgery, plaintiff had 5/5 strength in her shoulder. *Id*.

Plaintiff was consultatively psychologically evaluated by James C. Tanley, Ph.D., on March 18, 2011. *PAGEID* 599-603. Dr. Tanley assigned a global assessment of functioning score of 60 and diagnosed chronic adjustment disorder with mixed anxiety and depression. *PAGEID* 601. According to Dr. Tanley, plaintiff has no impairment in her ability to understand, remember, and carry out instructions. *PAGEID* 601. Plaintiff "can be expected to maintain good attention and

8

concentration with solid pace or simple and multistep tasks." *Id*. Dr. Tanley opined that, "given her nervousness and depression," plaintiff "may show some mild degree of impairment" in her ability to respond appropriately to supervision and to coworkers in a work setting. *Id*. Plaintiff may also "show some degree of compromise" in her ability to respond appropriately to work pressures in a work setting, "given her anxiety and depression." *Id*.

Douglas Pawlarczyk, Ph.D., reviewed the record and, on April 1, 2011, opined that plaintiff's "psych impairment is not severe." *PAGEID* 134-35. According to Dr. Pawlarczyk, plaintiff had mild restrictions in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. *Id*.

Karen Steiger, Ph.D., also reviewed the record and, on August 17, 2011, affirmed Dr. Pawlarczyk's assessment. *PAGEID* 153.

Edmond Gardner, M.D., reviewed the record and, on September 5, 2011, completed a physical residual functional capacity assessment. *PAGEID* 154-57. According to Dr. Gardner, plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and occasionally push/pull with her left-upper extremity. *PAGEID* 154-55. Because of her obesity, chronic lower back pain, and degenerative disc disease of the lumbosacral spine and degenerative joint disease of the cervical spine, plaintiff could never climb ladders, ropes or scaffolds; could occasionally stoop, kneel, crouch, and climb ramps and stairs; and could frequently

9

balance. Dr. Gardner limited plaintiff to "[o]ccasional overhead reaching on left due to pain and LOM." *PAGEID* 156. Plaintiff should also avoid all exposure to hazards such as machinery and heights due to obesity and lower back pain. *Id*.

Plaintiff treated with Aaron Roberts, M.D., on November 2, 2011, for left shoulder pain. *PAGEID* 708-09. Plaintiff reported that her shoulder pops at times, she has limited range of motion, and her hand goes numb when she sleeps. *PAGEID* 708. Upon examination, plaintiff had a nonantalgic gait; good flex*ion*, extension, lateral rotation, and lateral flexion in her cervical spine; full abduction, forward flexion, and internal and external rotation of the shoulders bilaterally; and 5/5 grip strength and 5/5 muscle strength in her shoulders, biceps, and triceps. *Id*. Plaintiff had positive Hoffmann bilaterally, tenderness over the left lateral epicondylitis, pain with passive volar flexion, tenderness over the lateral epicondylar region, and positive impingement of the left shoulder. *Id*. Dr. Roberts assessed left shoulder pain and left lateral elbow or lateral epicondylitis. *Id*. On July 11, 2012, Dr. Roberts found that plaintiff had, *inter alia*, a non-antalgic gait, negative straight leg test, 5/5 grip strength, and 5/5 muscle strength. *PAGEID* 704. Plaintiff received a cortisone injection for her elbow. *Id*.

Plaintiff treated with Anthony Lattavo, D.O., on January 10, 2012, for neck, back, and shoulder pain. *PAGEID* 706-07. Plaintiff reported stabbing and aching pain and that she had fallen approximately eight times for no apparent reason in the previous two

10

years and three times in the previous year. *PAGEID* 706. Upon examination, plaintiff had an antalgic gait, a moderately unsteady tandem gait, markedly restricted range of motion in the sacroiliac joints and supraspinous ligaments, and mildly diminished range of motion and strength in the neck and cervicothoracic spine. *Id*. Plaintiff's left shoulder displayed full range of motion with moderate weakness in scaption and external rotation and markedly positive impingement signs. *PAGEID* 707. Dr. Lattavo diagnosed low back pain with remote lumbar sprain, lumbar degenerative disk disease, lumbar spondylolisthesis, stenosis and possible radiculopathy; neck pain with long tract neurologic signs; and left shoulder pain with rotator cuff tendinopathy. *PAGEID* 707. On April 21, 2012, Dr. Lattavo found that plaintiff's examination "is suggestive that her cervical canal is becoming more and more stenotic." *PAGEID* 705. Plaintiff displayed "neurologic signs with gait instability and restricted range of motion of the lumbar spine and showed anterolisthesis at L4-L5." *Id*. Dr. Lattavo recommended that plaintiff undergo subacromial injections for her shoulder. *Id*.

Plaintiff was evaluated by Nancy Renneker, M.D., on December 13, 2012. *PAGEID* 804-08. Upon examination, plaintiff limped on level surfaces; and her bilateral upper extremity strength, deep tendon reflexes, and sensation were within normal limits; she had 5/5 strength throughout available range of motion, but with pain; 4/5 strength in the left elbow flexors and left elbow/left forearm supinators; 3+/5 strength in the left extensor indices; 3+/5 strength

11

in the left thumb opposition; decreased left grip and increased strength loss index; and normal right grip strength. *PAGEID* 807. Dr. Renneker opined that plaintiff had a 32 percent whole person impairment, consisting of 20 percent impairment for decreased active left shoulder range of motion, decreased active left elbow range of motion, and decreased sensation with dysesthesia in left axillary nerve distribution; eight percent impairment for DRE Cervical Spine Category II; and eight percent impairment for DRE Lumbar Spine Category II. *Id*.

Dr. Renneker also completed a physical capacity evaluation on December 13, 2012. *PAGEID* 811-13. According to Dr. Renneker, plaintiff could lift and carry five pounds occasionally and one to two pounds frequently. *PAGEID* 811. Plaintiff could sit for 20 minutes before needing to stand, stand for 15 minutes before needing to sit, and would need to lie down two times in an eight-hour workday. *Id*. Dr. Renneker opined that plaintiff could occasionally twist, occasionally partially bend, never crouch or climb ladders, and never climb stairs on a job. *PAGEID* 812. Plaintiff would have difficulty balancing on level terrain and narrow, slippery, or erratically moving surfaces. *Id*. Plaintiff could never reach or finger and could occasionally handle and feel with her left upper extremity. *Id*. She could occasionally reach and frequently handle, finger, and feel with her right upper extremity. *Id*. She could never push or pull. *Id*. Plaintiff should avoid concentrated exposure to extreme heat, humidity, fumes, odors, and dusts; she should avoid even moderate

12

exposure to extreme cold and wetness and should avoid all exposure to vibration and never climb. *PAGEID* 812-13. Plaintiff could not use her left lower extremity to operate foot controls. *PAGEID* 813. Finally, Dr. Renneker opined that plaintiff would be able to perform these functions on a sustained work day basis for zero to three days per week and for fewer than three consecutive weeks per month. *Id*.

**III. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of "dysfunction of a major joint (left shoulder); disorder of the back (including neck); and obesity." *PAGEID* 71. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> lift/carry and push/pull twenty pounds occasionally and ten pounds frequently, but only occasionally push and/or pull with the left upper extremity; stand and/or walk six hours in an eight-hour workday, and sit six hours per eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; only occasionally reach with the left upper extremity; and never work around hazards such as unprotected heights or moving machinery. In formulating this conclusion, I relied upon Exhibits 3A, 4A, 7A, and 8A, all of which are consistent with the foregoing limitations.

*PAGEID* 72-73. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC precludes plaintiff's past relevant work as a home health aide, but does not preclude the performance of plaintiff's past relevant work as a case manager. *PAGEID* 77. Alternatively, the administrative law judge found that plaintiff is able to perform a significant number of jobs in the

13

national economy, including such jobs as companion, security guard-unarmed, and office helper. *PAGEID* 78-79. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from February 1, 2008, through the date of the administrative decision. *PAGEID* 79.

**IV. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d

14

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge violated the treating physician rule in evaluating the opinions of Dr. Yadav.  *Statement of Errors*, pp. 11-20.  Plaintiff specifically argues that the administrative law judge erred in failing to give controlling weight to Dr. Yadav's opinions and in failing to provide "good reasons" for discounting Dr. Yadav's opinions.  *Id*.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to determine how much weight should be given to the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting

the opinion of a treating provider, *i.e.,* reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). This special treatment afforded to the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson,* 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

As noted *supra*, plaintiff treated regularly with Dr. Yadav from 2006 through 2012. *See* PAGEID 531-98, 604-38, 666-89, 711-62, 819-22. In a June 1, 2011 physical capacity evaluation, Dr. Yadav opined that plaintiff could occasionally lift and carry five pounds, stand and walk less than 30 minutes during an eight-hour day, and sit less than 30 minutes during an eight-hour day. PAGEID 779-81. Plaintiff could sit for 20 minutes before needing to stand, stand for 10 minutes before needing to sit, and she would need to lie down two to three times during an eight-hour day. *Id*. Dr. Yadav indicated that these limitations were supported by "painful SLR – B/L and [decreased] PROM" and "MRI - L Spine – multilevel DDD, spondylolisthesis L4-L5." PAGEID 780. Plaintiff could never climb ladders or push/pull and could frequently twist, stoop/bend, crouch, and climb stairs with pain. *Id*.

Plaintiff would have difficulty balancing on narrow, slippery, or erratically moving surfaces because "the pain in my back and legs makes it difficult to walk on uneven surfaces and tends to fall." *Id*. According to Dr. Yadav, these limitations had existed since 2006 and that plaintiff could perform these activities "in combination, on a sustained work day basis" for zero to three days per week and for fewer than three consecutive weeks per month. *PAGEID* 781.

Dr. Yadav also completed a chronic pain residual functional capacity questionnaire on December 12, 2012, *PAGEID* 814-18, in which he opined, *inter alia*, that pain often interfered with plaintiff's attention and concentration and severely limited plaintiff's ability to deal with work stress. *PAGEID* 815. According to Dr. Yadav, plaintiff could walk less than one block without resting or severe pain, sit for 20 minutes at one time, stand for 20 minutes at one time, and sit and stand/walk for a total of less than two hours in an eight-hour workday. *PAGEID* 815-16. Plaintiff would need to walk during a workday every 20 minutes for 10 minutes on each occasion. *PAGEID* 816. Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally. *PAGEID* 817. Plaintiff could occasionally bend and twist at the waist; could use her right hand 80 percent of the time to grasp, turn, and twist objects; and would miss approximately two days of work per month due to her impairments or treatment. *PAGEID* 817.

17

The administrative law judge categorized Dr. Yadav as a treating physician and expressly considered his June 2011 opinion, but assigned "little weight" to that opinion:

> I have considered the opinion of treating physician, Dr. Yadav, and have given his opinion little weight as it is not consistent with the evidence as a whole and more specifically, his own treatment notes (Exhibit 15F/4-6). Dr. Yadav opines that the claimant can stand and walk for less than thirty minutes and sit less than thirty minutes per workday, yet on the same day his treatment notes indicate the claimant has 5/5 muscle strength and a steady gait (7F/7). These observations seem inconsistent with an individual with the level of limitation opined. Dr. Yadav also based his opinion of [sic] the claimant's positive straight leg raising, but as previously noted Dr. Roberts one month later notes straight leg raising is negative (Exhibit 12F/2). Furthermore, this opinion is noticeably more limited than the abilities the claimant testifies to be capable of engaging in and does not appear consistent with the claimant's busy lifestyle. While a treating source opinion may be given controlling weight if it is not inconsistent with other substantial evidence (SSR 96-2), in this case Dr. Yadav's opinion is inconsistent.

*PAGEID* 76. The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Yadav's June 2011 opinion and the reasons for assigning that weight. However, it appears that the administrative law judge may have overlooked Dr. Yadav's December 2012 opinion. In analyzing Dr. Yadav's opinion, the administrative law judge indicated that he considered "the opinion" of Dr. Yadav and he specifically referred to only the June 2011 opinion (Exhibit 15F/4-6). Dr. Yadav's June 2011 and December 2012 opinions contain similar limitations, but those opinions were rendered more than 18 months apart and plaintiff continued to treat with Dr. Yadav on a regular basis during the interim. *See PAGEID* 604, 669-72, 679-82, 684-89, 711-18, 819-22. This is also significant because the administrative

18

law judge discounted Dr. Yadav's June 2011 opinion, at least in part, as inconsistent with medical evidence from June and July 2011. *See* *PAGEID* 76.

As noted, the administrative law judge made no mention of Dr. Yadav's December 2012 opinion. Thus, it appears that the administrative law judge did not evaluate the December 2012 opinion for controlling weight, nor did he consider the factors required by *Wilson*. The administrative law judge simply has not provided reasons "sufficiently specific to make clear to any subsequent reviewers" the weight assigned to Dr. Yadav's December 2012 opinion or the reasons for assigning that weight. *See Rogers*, 486 F.3d at 242. Under these circumstances, the Court is unable to evaluate the administrative law judge's evaluation of Dr. Yadav's December 2012 opinion or find that the evaluation is supported by substantial evidence.

The Court therefore concludes that the matter must be remanded for further consideration of Dr. Yadav's December 2012 opinion.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** for further consideration of Dr. Yadav's December 2012 opinion.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


                                                  *s/Norah McCann King*
                                                  Norah McCann King
January 26, 2015                  United States Magistrate Judge